Slip Op. 10 - 16

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

```
                                      :
WASHINGTON INTERNATIONAL              :
INSURANCE COMPANY,                    :
                                      :
                  Plaintiff,          :
                                      :
            v.                        :     Before: R. Kenton Musgrave, Senior Judge
                                      :     Court No. 08-00156
UNITED STATES,                        :
                                      :
                  Defendant.          :
                                      :
```

## OPINION

[Sustaining results of antidumping duty administrative review remand determination.]

Dated: February 9, 2010

*Sandler, Travis & Rosenberg* (*Thomas V. Vakerics*, *T. Randolph Ferguson*, *Kristen S. Smith*, and *Mark D. Tallo*), for the plaintiff.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David S. Silverbrand*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Hardeep K. Josan*), of counsel, for the defendant.

Musgrave, Senior Judge:  This opinion presumes familiarity with Slip Op. 09-78 (Jul. 29, 2009), addressing the arguments of Washington International Insurance Company ("WII"), surety for principal/respondent Xuzhou Jinjiang Foodstuffs Co., Ltd. ("Xuzhou"), with respect to *Freshwater Crawfish Tail Meat From the People's Republic of China*, 73 Fed. Reg. 20249 (Apr. 15, 2008), Public Document ("PDoc") 135 ("*Final Results*"), as compiled by the International Trade Administration of the U.S. Department of Commerce ("Commerce").  Commerce has submitted its *Final Results of Redetermination* dated Oct. 26, 2009 ("*Redetermination*"), indicating that

Commerce continues to apply total adverse facts available to Xuzhou and that the amount thereof is 188.52%, and the parties have now submitted comments thereon. The results are examined pursuant to 19 U.S.C. § 1516a(b)(1)(B)(i), and subject thereto, WII argues for further remand. For the following reasons, however, the *Redetermination* must be sustained.

## *Discussion*

### I. *Adverse Facts Available*

Commerce was asked to reconsider on remand whether partial or total adverse facts available ("AFA") is appropriate. Commerce maintains in its *Redetermination* that total AFA is warranted against Xuzhou because the record embodies "extensive omissions," unreported "significant data elements" and sales ledgers of questionable credibility, not merely "partial gaps" in U.S. sales data. *Redetermination* at 4 (accurate information is required to make a reliable determination and "pervasive deficiencies in portions of information submitted can undermine the reliability of a respondent's submissions") (referencing *Steel Authority of India, Ltd. v. United States*, 25 CIT 482, 486-87, 149 F. Supp. 2d 921, 928 (2001)). Specifically, Commerce reiterates that Xuzhou omitted a "significant" quantity of subject merchandise sales by reporting them as non-subject merchandise sales. *Id*. at 2-3. Such a circumstance, Commerce maintains, necessarily renders Xuzhou's submitted factors of production ("FOP") data unreliable, specifically the per-unit FOP consumption quantity normally relied upon when calculating "normal value" for non-market economy companies. *Redetermination* at 2-3 (referencing PDoc 65 at attachment 1). *Cf.* 19 U.S.C. § 1677b(c)(1)(B) *with* § 1677b(a)(1)(B)(i). Commerce therefore declined to use partial AFA in the calculation of Xuzhou's margin.

WII vehemently disagrees with this result.  Because Commerce challenged only Xuzhou's statements regarding the number of sales of subject merchandise it made and at no time claimed that Xuzhou's reported sales were untimely submitted or unverifiable or not provided to the best of Xuzhou's ability or useable only with undue difficulties, WII argues it is improper for Commerce to "write out" of the administrative record Xuzhou's "continued participation and cooperation" throughout the review, just as it contends *Steel Authority* is inapplicable to this matter because the respondents in that case had failed to satisfy the requirements of 19 U.S.C. § 1677m(e) in their entirety (*i.e.*, the information had been untimely submitted, unverified, incomplete, and could not be used without undue difficulties).  *See Steel Authority*, 25 CIT at 488, 149 F. Supp. 2d at 929. WII further argues that even if a respondent has failed to fully cooperate, Commerce's mandate is to determine dumping margins as accurately as possible, and an adverse inference is only authorized with respect to the specific information that a respondent has failed to provide.  *See generally* Pl.'s Comments on DOC Final Results of Redetermination ("Pl.'s Br.") at 11-13 (additionally referencing *Fujian Machinery & Equipment Import & Export Corp. v. United States*, 25 CIT 1150, 1159, 178 F. Supp. 2d 1305, 1317 (2001) and *Ferro Union, Inc. v. United States*, 23 CIT 713, 721, 74 F. Supp. 2d 1289, 1297 (1999)) & n.16.  WII argues Xuzhou's situation is analogous to *Shandong Huarong Machinery Co., Ltd. v. United States*, 30 CIT 1269, 1281, 435 F. Supp. 2d 1261, 1273 (2006), wherein the  application of total AFA was found unreasonable when Commerce had verified some but not all of the respondent's sales data.  *Id*. at 13-14 (referencing additionally *Shandong Huarong General Group Corp. v. United States*, 27 CIT 1568, 1594-95 (2003) and further citation omitted).

The court, however, must agree with the government that *Shandong* is of limited applicability here. That matter concerned an attempt to apply total AFA to sales of six types of subject merchandise, when the particular respondents concerned had failed to provide complete sales information as to only two types. The matter at bar does not involve such severable, discreet and conceptually complete products and their information declarations; rather, it involves administrative findings on declarations regarding the sole subject merchandise of this proceeding – crawfish tailmeat – and therefore appears more akin to *Shanghai Taoen International Co., Ltd. v. United States*, 29 CIT 189, 360 F. Supp. 2d 1339 (2005), wherein this Court found the application of total AFA appropriate in light of an analogous determination on the credibility of a particular respondent's sales information.[1]

And therein lies the rub: the reality is that WII confronts a determination on the credibility of certain declarations by Xuzhou that affect the reliability of Xuzhou's reported U.S. sales information in its entirety. Such a credibility determination may thus result in a record of information that is "so incomplete that it cannot serve as a reliable basis for reaching the applicable determination[,]" even if the respondent has been "cooperative" and acted to the best of its ability

---

[1] The AFA rate in the matter at bar, 188.52%, is obviously between *Shandong* and *Shanghai* in light of insufficient corroboration of the 223.01% AFA rate as applicable to Xuzhou. *See also infra*. Be that as it may, at this point it may be of some worth to acknowledge the government's proposition that "forcing" Commerce to use partial information submitted by respondents would result in manipulation of the administrative process by interested parties submitting only beneficial information, thereby allowing such parties to have "the ultimate control to determine what information would be used for the margin calculation" rather than Commerce. *See* Def.'s Resp. at 4 (quoting *Steel Authority*, 25 CIT at 487, 149 F. Supp. 2d at 928).

in providing some information,[2] and it is reviewed for abuse of discretion.  *See*, *e.g.*, *DeSarno v. Department of Commerce*, 761 F.2d 657, 661 (Fed. Cir. 1985); *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985); *see also Hambsch v. Department of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) (credibility determinations by presiding officials are "virtually unreviewable").  On the record before the court, none is discernable, nor does the record disclose the existence of substantial evidence to support finding as a matter of law that the so-called "unreported" subject merchandise sales did not render the remainder of Xuzhou's reported information "so incomplete" as to "serve as a reliable basis for reaching the applicable determination."

## II.  *Rate Selected as Adverse Facts Available*

Commerce was also asked to reconsider on remand the rate it had selected for AFA. In the *Final Results*, Commerce selected the PRC-wide rate of 223.01% as a potential AFA rate and attempted to corroborate it by the light of a "rough" margin of a particular U.S. sale price, reported for the POR, as compared with the statutory normal value of the immediately preceding 2004-2005 review.[3]  Slip Op. 09-78 rejected the notion that the comparison corroborated the applicability of the PRC-wide rate and remanded for further consideration.

---

[2]  *Cf.* 19 U.S.C. § 1677m(e)(3) *with* § (e)(4), and assuming, *arguendo*, that to have been the case; *but see* Slip Op. 09-78 at 20 as to other information provided.

[3]  *See* 19 U.S.C. § 1677e(c), requiring that when Commerce relies on secondary information rather than information obtained during the course of an investigation or review, it must corroborate that information "to the extent practicable[.]" Nothing in the antidumping statute indicates the measure or standard by which such secondary information must be corroborated, but "to the extent practicable" cuts a wide swath.  In this regard, at least it may be opined that Congress intended Commerce to exert its utmost to remove doubt as to the reliability of any secondary information it would rely upon.

On remand, Commerce listed the information of record upon which an appropriate contemporaneous AFA rate for Xuzou might be based.  After doing so, Commerce rejected basing that rate on Xuzhou's own dumping margin from the 2004-2005 new shipper review or on the dumping margin calculated for the "cooperative" respondent in the review, "because there are higher rates on the record." *Redetermination* at 5.

Commerce is *forbidden*, of course, from engaging in the type of results-oriented decision-making such a statement implies, *see*, *e.g.*, *Shanghai Taoen*, *supra*, 29 CIT at 197, 360 F. Supp.2d at 1346-47 ("Commerce must not . . . assume the highest previous margin applies simply because it is the one most prejudicial to the respondent") (referencing *Ferro Union, Inc. v. United States*, 23 CIT 178, 205, 44 F. Supp. 2d 1310, 1335 (1999)), but  Commerce goes on to clarify that

> it would be inappropriate to use the rates from the[ ] cooperative respondents as AFA because there are higher rates in this case that are more appropriate as AFA . . ..  The Department does not find that selecting either the rate of the cooperative respondent from the 2005-2006 review, or Xuzhou's own rate from its new shipper review, would be appropriate in this case because there is a higher rate on the record *that is more probative of Xuzhou's dumping margin*.

*Redetermination* at 9 (italics added).  That rate results from Commerce's comparison of the lowest U.S. net price among Xuzhou's "unreported" sales and the higher of the two normal values from Xuzhou's 2004-2005 new shipper review.  Commerce also observed that using the lowest subject merchandise price provides the necessary "built-in increase intended as a deterrent to non-compliance" that "the Court" required.  *Id.* at 8 (quoting Slip Op. 09-78 at 25).  *But see*, *rather, Fratelli De Cecco di Fillippo Fara San Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed.

Cir. 2000) (AFA must "be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance").

After deducting foreign movement expenses from the U.S. price and inflating the 2004-2005 normal value to a 2005-2006 value using price data reported in *International Financial Statistics* from the International Monetary Fund, Commerce calculated an AFA rate for Xuzhou of 188.52%. *Id*. at 5-6 (referencing CDoc 37 (Oct. 1, 2007) at attachment VII).

WII argues on several fronts that the foregoing does not comport with the order of remand. WII first complains that Commerce has again used methodology that was "previously rejected" in Slip Op. 09-78 and is "inherently unreliable." Pl.'s Br. at 2-3. The court, however, did not previously reject the method Commerce used, in order to calculate a "rough" margin for Xuzhou, *per se*. *See* Slip Op. 09-78 at 21-22; *see also Thai Pineapple Pub. Co., Ltd. v. United States*, 187 F.3d 1362, 1365 (1999) ("methodologies relied upon by Commerce in making its determinations are presumptively correct"). As mentioned, the court simply rejected the inference that comparing that margin (which, it is to be noted, was derived in part from actual data in the POR) with the PRC-wide rate amounted to corroboration of the latter because the difference between the two was wider than any observable standard for "corroboration." *See* Slip Op. 09-78 at 22-23 n.20;[4] *see also* 19 U.S.C. § 1677e(c).

On the calculation itself, WII complains that Commerce's adjustments to normal value and U.S. price were unsupported by substantial evidence and not in accordance with law. Specifically, WII alleges that the adjustments were undertaken for no reason other than to maximize

---

[4] Further, given record evidence of Xuzhou's recent market practices, it was not as though corroboration was impracticable. *Cf*. 19 U.S.C. § 1677e(c).

the size of the dumping margin, because Commerce did not originally make such adjustments in the

*Final Results*, and that these adjustments are "discretionary." Pl.'s Br. at 14-15. WII also points to

Commerce's own explanation that an AFA rate "need only be rationally related to a respondent and

not the precise margin that would have been calculated[.]" *Id*. (quoting *Final Results* at 9). The

court, however, differs on all points. In complying with the order of remand, Commerce has rather

complied with the guidance enunciated by *F.lli De Cecco*, *supra*, albeit with some reservation.

But continuing on that theme, WII argues that the rate Commerce calculated on

remand is inherently punitive for the same reason as the "extreme divergence" earlier observed. Pl.'s

Br. at 2-3 (referencing Slip Op. 09-78 at 24). The court, however, must abide the substantial

evidence standard in matters such as these; it does not sit *de novo*. Notwithstanding arguable

inclination or dicta to the contrary, unless it can be shown that a margin is not rationally related to

the record of a respondent's actual trading practices, it is difficult, if not impossible, to show that a

margin's extremity renders it punitive. *Cf*., *e.g. PAM, S.p.A. v. United States*, 582 F.3d 1336, 1340

(Fed. Cir. 2009) ("[s]o long as the data is corroborated, Commerce acts within its discretion when

choosing which sources and facts it will rely on to support an adverse inference"). Unfortunately

for WII, its argument fails to do so.

WII next argues that Commerce inappropriately relied on the FDA photographs of

record. *Cf.* Slip Op. 09-78 at 14-15, 18 (indicating that certain FDA photographs "support the

inference" that two entries consisted of crawfish tail meat). The argument runs as follows: (1) any

presumption of regularity that applies to FDA activities is rebuttable, and if there is any, it was

rebutted by the FDA itself because the two FDA reports are "contradict[ory]" and therefore of "no

probative value whatsoever[;]" (2) an FDA agent taking pictures at a port is "a task completely lacking in protocols necessary to support such a presumption[;]" (3) only an "expert" can conclude what the contents of the bags in the FDA photo(s) consist of; (4) such "expertise" is outside Commerce's; (5) the Court owes no "deference" to Commerce's conclusion in that regard; and (6) the only conclusion that can be drawn from the photos is that they are of bags containing a "reddish-white material."  Pl.'s Br. at 3-5 & n.8.

        The court remains unpersuaded that the two FDA reports cancel each other out as a matter of law, or that Commerce abused its discretion when evaluating them for what they purport to represent.  This includes the FDA photographs.  WII offers nothing further to back up its assertion that only an "expert," *e.g.*, of the type contemplated by Rule 702 of the Federal Rules of Evidence, is qualified to take or evaluate photographs of this type on behalf of an agency, and the court discerns no reason for holding that Commerce should have concluded as a matter of law that the photographs of record are of entries outside the purview of the administrative review at bar.  Once again, WII offers no evidence even hinting at bad faith or improper behavior on the part of the FDA or Commerce at the time of the relevant administrative decision(s), and in the absence of such a showing it is inappropriate for a court to inquire into the mental processes of the administrative decision makers involved.  *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).  *Cf.* Pl.'s Br. at 6 n.10.

        WII also argues the FDA "mistakenly" identified the photographs as associated with a different entry number.  This argument apparently focuses on a single digit of an eleven-digit entry number that WII contends was intentionally transcribed by the FDA as a "6" and is not the "8"

associated with a particular entry subject to this review, but the argument is not further elaborated.

To the extent the argument compels a factual determination, the court is precluded from doing so

(*see* 19 U.S.C. § 1516a(b)(1)(B)(i)), but even if the digit was transcribed as argued by WII, the court

cannot conclude that it would have been unreasonable for Commerce itself to have concluded, albeit

without further written comment, that such error was clerical and inadvertent.  *Cf. Bowman Transp.,*

*Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974) (an agency "decision of less than ideal

clarity" will be upheld "if the agency's path may reasonably be discerned").

      Similarly, WII makes a valiant attempt to (re)argue that price alone, *e.g.*, for the

entries considered by the FDA and Commerce, demonstrates that entries "at prices more obviously

approximating that of non-subject merchandise than subject merchandise" must have been of whole

crawfish, not crawfish tailmeat.  Pl.'s Br. at 4 (quoting Slip Op. 09-78 at 23) & n.7.  To the extent

WII is appealing for the kind of holding – on the evidence of record – that the international trade bar

must know that this Court *cannot* make, suffice it to state that this court *will not* make it, being

limited by the standard of review to which these sorts of matters are subject.  *See* 19 U.S.C. §

1516a(b)(1)(B)(i).  The most that may be said in this regard, at this stage and in this forum, is that

Commerce has discretion on the weight to accord such evidence, and the Court is not free to disagree

with Commerce's interpretation of the record if that interpretation is not shown to have been

unreasonable.  *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619-20 (1966).  That said,

this court continues to adhere to its prior opinion on this point.

      WII's somewhat stronger argument is that, as a matter of logic, it is not possible to

square rejecting the entirety of Xuzhou's information as "questionable" while relying on some of it

in order to calculate a margin for Xuxhou.   Further, WII argues Commerce's rationale for

determining that the FOP data are unreliable is "circular" and unsupported by non-dependent

substantial evidence on the record, being dependant upon the finding (with which WII continues to

disagree) that Xuzhou had failed to report sales of subject merchandise.   While those arguments have

a certain appeal, in the end the government is correct that they conflate Commerce's determination

to reject as unreliable the United States sales and FOP data Xuzhou submitted with Commerce's

determination to use as AFA "other" record evidence, *i.e.* pricing information from the "unreported"

sales and the normal value from the new shipper review.   *See* Def.'s Resp. at 8-0 (referencing

*Redetermination* at 8).   To put it more bluntly, the court cannot state that Commerce erred in hoisting

Xuzhou "by its own petard," *cf. Heveafil Sdn. Bhd. v. United States*, 25 CIT 147, 151 (2001) ("[i]t

is clear to the court that unverifiable product-specific direct material costs would prevent an[ ] . . .

accurate cost calculation"), or that this was an unreasonable or inconsistent finding by Commerce,

although the court can sympathize that from WII's (and undoubtedly Xuzhou's) perspective it is

certainly a most disagreeable result.

        Lastly, WII argues that Commerce's calculated margin for Xuzhou errs as a matter

of law, because Commerce failed to follow its long-established policy of using the highest calculated

margin for a cooperative respondent from current or prior segments of the proceeding as AFA.  Pl.'s

Br. at 14-17 (referencing Proprietary Memorandum Regarding Comment 3 in the Issues and Decision

Memorandum at 17 (Apr. 7, 2008), Confidential Record Document 52).   *See Kompass Food Trading*

*International v. United States*, 24 CIT 678 (2000).   The court cannot conclude, however, that

Commerce erred as a matter of law in making an exception to such a policy, assuming one is

discernable, insofar as the margin for the respondent concerned is calculated based on actual data and shown to be greater than highest calculated margin for a cooperative respondent from current or prior segments of the proceeding. *See F.lli De Cecco*, *supra*, 216 F.3d at 1032 ("it is clear . . . that the statute has no requirement that Commerce is limited to the highest rate imposed on a cooperating company when selecting a rate for a non-cooperating respondent"). Further, the court cannot conclude that Commerce's decision to use the lowest U.S. sale price as its AFA starting point, in order to provide the "built-in increase" required by *De Cecco*, was irrational.

## *Conclusion*

For the foregoing reasons, substantial evidence on the record supports the results of remand in the *Redetermination*. Judgment will enter accordingly.

            /s/  R. Kenton Musgrave
            R.  KENTON MUSGRAVE, Senior Judge

Dated: February 9, 2010
       New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : : | Court No. 08-00156 |
| Defendant. | : : : | |

## JUDGMENT

The plaintiff having filed challenges to certain findings of the defendant International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Freshwater Crawfish Tail Meat From the People's Republic of China: Final Results and Partial Rescission of the 2005-2006 Antidumping Duty Administrative Review and Rescission of 2005-2006 New Shipper Reviews*, 73 Fed. Reg. 20249 (Apr. 15, 2008), and having interposed a motion for judgment upon the record pursuant to USCIT Rule 56.2, resulting in remand of the matter to the ITA for further consideration; and the ITA having filed herein on October 27, 2009 its *Final Results of Redetermination Pursuant to Court Remand*, dated October 26, 2009, pursuant to Slip Op. 09-78 (Jul. 29, 2009) ("*Redetermination*"); and the court having reviewed the *Redetermination* and the parties comments thereon and finding the *Redetermination* in accordance with the order of remand; and the Court, after due deliberation and consideration of all papers and proceedings, having rendered a decision herein; now, therefore in conformity with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED** that the final results of the *Redetermination* dated October 26, 2009 be, and they hereby are, sustained.

/s/  R. Kenton Musgrave
R.  KENTON MUSGRAVE, Senior Judge

Dated: February 9, 2010
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____      By: _____
                                                                                       Deputy Clerk